# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**CHRIS BUBBENMOYER,**

    **Plaintiff,**

**-vs-**             **Case No.  6:11-cv-1552-Orl-22KRS**

**BOCA BARGOONS OF MELBOURNE,
INC.,**

    **Defendant.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

  This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 58)** |
| **FILED:** | **January 9, 2013** |

## I. PROCEDURAL HISTORY.

  On September 22, 2011, Plaintiff, Chris Bubbenmoyer, filed a complaint against

Defendant, Boca Bargoons of Melbourne, Inc. ("Boca Bargoons"), alleging violations of the Fair

Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  Doc. No. 1.[1]  On November 9, 2012,

---

[1] Bubbenmoyer brought his claim on behalf of himself and others similarly situated.  Doc. No. 1. Bubbenmoyer is the only individual who has filed a notice of intent to opt-in to this putative collective action.  Doc. No. 1 at 5.

Boca Bargoons filed its Motion for Summary Judgment.  Doc. No. 58.  In support of its motion,

Boca Bargoons filed the following:

- An uncertified transcript of the deposition of Bubbenmoyer (Doc. No. 58-1);

- The transcript of the deposition of former Boca Bargoons employee Robert Eaton (Doc. No. 58-2);

- The transcript of the deposition of former Boca Bargoons employee Phillip McKinley (Doc. No. 58-3);

- The transcript of the deposition of former Boca Bargoons employee Karen Lyda (Doc. No. 59-1); and

- An excerpt from Boca Bargoons's Verified Answers and Objections to Plaintiff's First Set of Interrogatories (Doc. No. 59-2).

Bubbenmoyer filed his Response to Boca Bargoons's motion on December 3, 2012.  Doc.

No. 62.  In support of his response, Bubbenmoyer filed the following:

- The certified transcript of the deposition of Bubbenmoyer (Doc. No. 63-1);

- The transcript of the Fed. R. Civ. P. 30(b)(6) deposition of Boca Bargoons's co-owner Edward Wollstein as corporate designee for Boca Bargoons (Doc. No. 63-2);

- The transcript of the deposition of Boca Bargoons's co-owner Cynthia Wollstein (Doc. No. 63-3);

- A duplicate copy of the transcript of the deposition of former Boca Bargoons employee Karen Lyda (Doc. No. 63-4);

- A duplicate copy of the transcript of the deposition of former Boca Bargoons employee Phillip McKinley (Doc. No. 63-5); and

- A duplicate copy of the transcript of the deposition of former Boca Bargoons employee Robert Eaton (Doc. No. 63-6).

Boca Bargoons did not file a reply in support of its motion.  Accordingly, this matter is now ripe for resolution.

## II.     STATEMENT OF FACTS.

### A.     *Introduction and Undisputed Facts.*

With this lawsuit, Bubbenmoyer alleges that Boca Bargoons improperly classified him as exempt from the overtime provisions of the FLSA and that he should have been paid at one-and-a-half-times his regular hourly rate for all hours in excess of forty (40) per week.  Doc. No. 1 ¶¶ 11-16; Doc. No. 62 at 1-2.  Boca Bargoons defends against Bubbenmoyer's claims by arguing that he was properly classified as exempt from the overtime provisions of the FLSA as an administrative employee.  Doc. No. 42 at 4; Doc. No. 58 at 2.  As will be discussed in detail below, the keys to determining whether Bubbenmoyer was properly classified as an exempt administrative employee are the nature of his primary duty and whether or not his primary duty included the exercise of discretion and independent judgment with respect to matters of significance.

After a thorough review of all the materials submitted in support of the parties' summary judgment briefing, it is evident that the parties agree about very little in this case, including many facts about Bubbenmoyer's duties and responsibilities as a Boca Bargoons employee.  However, the parties seem to agree about at least the following facts:

Boca Bargoons operates a retail decorative fabric store in Melbourne, Florida.  Doc. No. 63-2: Deposition of Edward Wollstein ("E. Wollstein Dep.") at 6-7.[2]  The store predominately carries in-stock decorative fabric by the roll.  *Id.*  at 7.  After customers pick out their fabric, Boca

---

[2]  For ease of reference, all citations to depositions in this Report and Recommendation are to the original deposition transcript page numbers.

Bargoons cuts the desired yardage for the customers.  *Id.*  The Melbourne store is one of a number

of similar stores owned by Edward (or "Ed") and Cynthia (or "Cindy") Wollstein.  *Id.* at 6.  In

addition to her role as co-owner of the various Boca Bargoons stores, Cindy Wollstein also serves

as a vice president.  In that role, she works in the Boca Bargoons corporate office and does the

bookkeeping and the accounting for all the Boca Bargoons stores.  Doc. No. 63-3: Deposition of

Cynthia Wollstein ("C. Wollstein Dep.") at 6-7.  The Boca Bargoons stores also have employed

some relatives of Ed and Cindy Wollstein, including Bernie Wollstein, who is Ed Wollstein's

brother.  E. Wollstein Dep. at 12; Doc. No. 63-1: Certified Transcript of Bubbenmoyer Deposition

("Bubbenmoyer Dep.") at 7-8.[3]

Bubbenmoyer began working for Boca Bargoons in Ft. Myers.  E. Wollstein Dep. at 19;

Bubbenmoyer Dep. at 11-12.  At some point, Ed Wollstein offered to allow Bubbenmoyer to

transfer to the Boca Bargoons store in Melbourne.[4]  Bubbenmoyer Dep. at 13. When he offered

Bubbenmoyer a position at the Melbourne store, Ed Wollstein said that he wanted Bubbenmoyer

to "get the store turned around" and that he would give Bubbenmoyer "14 percent of the gross [of

the store]" if he did so.[5]  *Id.* at 13-14.  Wollstein also told Bubbenmoyer that he wanted

---

[3] Boca Bargoons filed an uncertified transcript of Bubbenmoyer's deposition in support of its motion for summary judgment and cited to that transcript throughout its supporting memorandum.  Doc. Nos. 58 and 58-1.  Bubbenmoyer filed a certified copy of his deposition transcript with his response to Boca Bargoons's motion, although the page citations in his supporting memorandum appear to refer to the uncertified transcript.  Doc. Nos. 62 and 63-1.  It is apparent that the uncertified transcript in the record (Doc. No. 58-1) is a draft.  Accordingly, I cite to the page numbers from the certified transcript in the record as Doc. No. 63-1.

[4] The parties do not provide a date for this transfer in their summary judgment briefing, and the record is unclear as to when it occurred.  Bubbenmoyer testified that he transferred in approximately November 2008.  Bubbenmoyer Dep. at 17.  Karen Lyda – who worked in the Melbourne store before Bubbenmoyer transferred and continued her employment thereafter –  placed the date in the fall of 2007.  Doc. No. 63-4: Deposition of Karen Lyda ("Lyda Dep.") at 6-8, 19.

[5] In its summary judgment brief, Boca Bargoons writes, "Importantly, Plaintiff was to receive compensation based on store profit in the form of a bonus."  Doc. No. 58 at 5.  Boca Bargoons cites to Bubbenmoyer's deposition

Bubbenmoyer to "fix" the store, which Bubbenmoyer interpreted to include fixing the physical elements of the store that were broken, such as lighting and air conditioning. *Id.* at 14-15. Ed Wollstein said that Bubbenmoyer could choose to work in the store by himself or to hire people to help him. *Id*. at 13-15.

After the transfer, Bubbenmoyer's job title was manager, and Boca Bargoons paid Bubbenmoyer a salary of $1,100 per week. E. Wollstein Dep. at 8-9; Bubbenmoyer Dep. at 14. There does not appear to have been a written job description for the manager position. During the majority of Bubbenmoyer's time at the Melbourne store, only one other employee worked in the store with him – a sales employee named Karen Lyda. Bubbenmoyer Dep. at 24; Lyda Dep. at 7. Unlike Bubbenmoyer, Lyda was compensated on an hourly basis. Bubbenmoyer Dep. at 70. On a daily basis, no other employee was physically present in the Melbourne store who outranked Bubbenmoyer. *Id*. at 20.

During his time at the Melbourne store, Bubbenmoyer spent most of his working time selling fabric and assisting customers, such as by writing up special orders for fabric a customer selected from a sample line. Bubbenmoyer Dep. at 17, 34, 41; Lyda Dep. at 20-22. Throughout his time at the Melbourne store, Bubbenmoyer also spent a significant amount of time making repairs to the store or doing maintenance work, including fixing the air conditioning and repairing lighting. Bubbenmoyer Dep. at 17-18, 65-66; Lyda Dep. at 21-22, 32. Bubbenmoyer also stocked

---

testimony about Ed Wollstein's promise to pay him "14 percent of the gross [of the store]" to support this position. Boca Bargoons does not cite any evidence suggesting that Bubbenmoyer actually received bonuses based on store profit.

the store and helped to keep it tidy.  Bubbenmoyer Dep. at 53; E. Wollstein Dep. at 18; Lyda Dep.

at 18, 21.[6]

Bubbenmoyer usually was the first to arrive at the Melbourne store, so on most days he

unlocked the store and turned off the alarm.  Bubbenmoyer Dep. at 60; Lyda Dep. at 32.  There do

not appear to have been any particular opening procedures that Bubbenmoyer was required to

perform before the store opened.  At the end of the day, Bubbenmoyer sometimes completed daily

settlement sheets or reports, which consisted of summarizing the day's sales, including listing the

checks received and credit card transactions processed.  E. Wollstein Dep. at 27; C. Wollstein

Dep. at 18.  This end-of-day closing paperwork took about twenty (20) minutes to complete.  Lyda

Dep. 18.  Bubbenmoyer also regularly initialed Lyda's time cards before they were sent to Boca

Bargoons's corporate office.  Bubbenmoyer Dep. at 26-27.  Once a week, Bubbenmoyer took

deposits for the store to the bank.  *Id.* at 52, 57.  Bubbenmoyer worked at the Melbourne store

until August 2011, when Ed Wollstein informed him that he was being laid off.  *Id.* at 6-7.

Beyond this skeleton of foundational facts, the parties' summary judgment briefing and the

supporting evidence are rife with examples of their disagreements.  The most material of these

disagreements are discussed below.

    B.    *Boca Bargoons's Statement of Facts.*

According to Boca Bargoons, Bubbenmoyer was "responsible for independently running

the Defendant's retail store in Melbourne, FL," "had very limited contact with the corporate

---

[6] Boca Bargoons does not explicitly admit the facts in this paragraph, but it does not dispute them either. Indeed, its summary judgment brief seems to concede this testimony for purposes of summary judgment by saying, "[I]t appears that Plaintiff chose to maintain direct involvement in all day to day aspects of his retail store, to include sales, maintenance and cleaning . . ."  Doc. No. 58 at 5.

office," and was "ultimately responsible for managing a successful retail location and making

independent decisions regarding the hiring of and duties assigned to additional staff."  Doc. No. 58

at 3-4 (citing Bubbenmoyer Dep. at 12-14, 19-20).[7]  Boca Bargoons asserts that, when necessary,

Bubbenmoyer "interviewed, supervised, evaluated, trained, signed off on timesheets, and set the

schedules for the other employees working in the Melbourne store, all of whom worked under his

supervision."  Id. at 5 (citing portions of depositions of Karen Lyda, Robert Eaton and Phillip

McKinley).  Boca Bargoons also submits that Bubbenmoyer was "ultimately responsible" for

completing the daily settlement sheets.  Id. at 11 (citing Doc. No. 59-2: Defendant's Answer to

Interrogatory 5).

       In support of this position, Boca Bargoons cites to, among other things, evidence

suggesting that Bubbenmoyer interviewed potential employees (Doc. No. 58-2: Deposition of

Robert Eaton ("Eaton Dep.") at 7-9; Doc. No. 58-3: Deposition of Phillip McKinley ("McKinley

Dep.") at 10-11)); supervised and trained other employees (Eaton Dep. at 10, 13, 17; McKinley

Dep. at 19-20; Lyda Dep. at 8), signed off on the timesheets of other employees (McKinley Dep.

at 20; Lyda Dep. at 29), and consulted with Lyda when she wanted time off or needed to leave

work early or arrive late (Lyda Dep. at 23).  It also cites evidence suggesting that Lyda considered

─────────────────────

        [7]  Boca Bargoons also makes a number of statements about Bubbenmoyer's duties and responsibilities
without citation to any record evidence.  See, e.g., Doc. No. 58 at 4 ("The Defendant had no means to monitor the day
to day activities of its retail location other than the hiring and entrustment of this monitoring to its store managers."), 5
("The ability of the Plaintiff to cho[o]se to delegate or not delegate work to other employees allowed him significant
discretion to structure his own duties and role at the Melbourne retail store on an ongoing basis"), 10 ("Like Mr.
Bubbenmoyer, the plaintiff in Stricker was responsible for the financial health of the store . . ."), 12 ("He . . . was
responsible for the smooth running of the store."), 13 ("This responsibility required the Plaintiff to make decisions
critical to the success or failure of the business.").  Upon review of the supporting materials submitted with the parties'
summary judgment briefing, these statements appear not to be supported by the record evidence.  Regardless, the
Court is not obligated to scour the record in an attempt to locate evidence that would support Boca Bargoons's
position when Boca Bargoons has not provided citations to that evidence, see Fed. R. Civ. P. 56(c), and I do not
consider these unsupported statements for purposes of this Report and Recommendation.

Bubbenmoyer to be her supervisor and that two other short-term employees (Robert Eaton – who worked for Boca Bargoons for one week (Eaton Dep. at 7) – and Phillip McKinley – who worked for Boca Bargoons for at most two months (McKinley Dep. at 7)) considered Bubbenmoyer to be their supervisor. Lyda Dep. at 8; Eaton Dep. at 10; McKinley Dep. at 11. With respect to the responsibility for submitting settlement sheets, Boca Bargoons cites to its own answer to one of Bubbenmoyer's interrogatories, in which it stated that Bubbenmoyer was "required to draft reports each day that kept track of the Defendant's sales." Doc. No. 59-2 at 2.

C.     *Bubbenmoyer's Statement of Facts.*

Bubbenmoyer disagrees significantly with Boca Bargoons's description of his responsibilities and duties. Bubbenmoyer testified that he never hired any additional employees to work in the Melbourne store. Bubbenmoyer Dep. at 24-25, 36-37. He testified that – other than Lyda – the only employees who ever worked in the Melbourne store were temporary stock people hired by Bernie Wollstein. *Id.* He also testified that he did not supervise those employees or give them any instructions. *Id.* Bubbenmoyer admitted that he initialed the time cards of employees who worked in the store (including Lyda) and that he did so to make sure the times were correct, but testified that Boca Bargoons did not require him to do so. *Id.* at 26-27, 31-33.

Regarding his supervisory relationship with Lyda, Bubbenmoyer testified that Lyda never asked him for direction and was "very self-sufficient." Bubbenmoyer Dep. at 25. He testified that he did not set Lyda's schedule and that it was pre-set before he arrived at the store. *Id.* at 27-28. He testified that Lyda never asked for any time off. *Id.* at 28. Bubbenmoyer testified that, when Lyda closed out the cash drawer for the day, he did not double check her work. *Id.* at 41-42. He testified that he never evaluated Lyda. *Id.* at 66. Lyda agreed that Bubbenmoyer never evaluated

her and also testified that Bubbenmoyer never disciplined her.  Lyda Dep. at 24.  Lyda also

testified that, when she went from full-time to part-time, she knew that her new schedule had to be

approved by the corporate office.  Lyda Dep. at 30.

   With respect to Bubbenmoyer's responsibility for the financial aspects of the store, the

record includes evidence suggesting that his responsibilities in this regard were not significant.

Bubbenmoyer testified that he did not complete or submit any accounting records to Boca

Bargoons's corporate office and that the only required report was the daily settlement sheet.

Bubbenmoyer Dep. at 42.  He testified that the corporate office paid the electric and water bills for

the Melbourne store and that he never saw the bills.  *Id.* at 70.   He testified that he never made

collection calls for Boca Bargoons.  *Id.* at 72.  Bubbenmoyer testified that Boca Bargoons did not

give him any sales goals for the store.  *Id.* at 68.  He also testified that he never received fourteen

percent of the Melbourne store's gross receipts, even though the store's sales went up after he

became manager.  *Id.* at 68-69.  He testified that Ed Wollstein did not blame him for the store's

performance when laying him off, but instead blamed the performance on the store's location.  *Id.*

at 71.

   Regarding the daily settlement sheet, Bubbenmoyer testified that he and Lyda split the

duties of closing out the cash drawer and completing the settlement sheet.  Bubbenmoyer Dep. at

39.  He testified that, most of the time, Lyda took on that duty.  *Id.*  When asked if he was

ultimately responsible for reporting cash receipts, Bubbenmoyer testified that the responsibility

lay with the person who completed the daily settlement sheet.  *Id.*  Bubbenmoyer also cites to

evidence suggesting that Boca Bargoons was aware that Lyda completed daily settlement sheets

and followed up directly with her if there was a problem with a sheet she completed.  Lyda Dep. at 31-32.

Countering Boca Bargoons's assertions that he was independently responsible for making crucial decisions about the Melbourne store without regular oversight from the corporate office, Bubbenmoyer cites to evidence suggesting that he could not accept returns without corporate approval (Bubbenmoyer Dep. at 43-44), could not quote prices for special orders (*Id.* at 34-35), could not hire contractors to perform repair or maintenance work without corporate approval (Lyda Dep. at 22-23), did not have the authority to decide how much employees in his store were paid (E. Wollstein Dep. at 59-60), and had to request office supplies from the corporate office (Bubbenmoyer Dep. at 53-54).  The record also contains evidence suggesting that Bubbenmoyer could not order inventory for the store (*Id.* at 51) and, at times, was directed by Cindy Wollstein not to accept checks from customers (*Id.* at 37-38).  Bubbenmoyer also cites to evidence suggesting that his daily duties did not differ from those of hourly sales employee Lyda, with the exception of performing some additional manual maintenance and repair tasks.  Lyda Dep. at 21.

## III.    STANDARD OF REVIEW.

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  It is the movant who "bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994)*, modified on other grounds*, 30 F.3d 1347 (11th Cir. 1994)).  Once the movant carries its initial burden, the

non-movant may avoid summary judgment by demonstrating an issue of material fact. *Fitzpatrick*

*v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citation omitted). The non-movant must

provide more than a "mere 'scintilla' of evidence" supporting its position, and "there must be

enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911

F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)).

When analyzing a motion for summary judgment, a court draws all reasonable inferences

from the evidence in the light most favorable to the non-movant and resolves all reasonable doubt

in the non-movant's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Lubetsky*

*v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1304 (11th Cir. 2002)). In addition, the court does not

make credibility determinations when ruling on a motion for summary judgment. *See Strickland*

*v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (citing *Anderson*, 477 U.S. at 255).

Nonetheless, "[t]here is [still] no genuine issue for trial unless the non-moving party establishes,

through the record presented in court, that it is able to prove evidence sufficient for a jury to return

a verdict in its favor." *Cohen*, 83 F.3d at 1349 (citing *Anderson*, 477 U.S. at 249).

## IV.    ANALYSIS.

### A.      *Legal Standard.*

The FLSA provides that employees are generally entitled to receive overtime pay at one-

and-a-half times their regular hourly rate for all hours worked in excess of forty (40) per week. 29

U.S.C. § 207(a)(1). The FLSA, however, exempts from its overtime pay requirements "any

employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C.

§ 213(a)(1). The employer bears the burden of showing entitlement to an exemption, and courts

construe overtime exemptions narrowly against the employer. *Jeffery v. Sarasota White Sox, Inc.*,

-11-

64 F.3d 590, 594 (11th Cir. 1995) (citing *Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255, 1256

(6th Cir. 1987)); *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1340 (11th Cir. 1994) (citing

*Brennan v. Sugar Cane Growers Co-op.*, 486 F.2d 1006 (5th Cir. 1973)).  The United States Court

of Appeals for the Eleventh Circuit has recognized the "Supreme Court's admonition that courts

closely circumscribe the FLSA's exemptions."  *Nicholson v. World Bus. Network, Inc.*, 105 F.3d

1361, 1364 (11th Cir. 1997) (citing *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

    The only exemption at issue in Boca Bargoons's motion for summary judgment is the

administrative exemption.[8]  The Code of Federal Regulations sets forth regulations interpreting the

FLSA.  Those regulations are given controlling weight unless found to be arbitrary, capricious, or

contrary to the statute.  *See Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir.

2009) (citing *Chevron, U.S.A. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984)).

    The current regulations interpreting the FLSA define an administrative employee as one:

(1) who is compensated on a salary basis at a rate not less than $455 per week; (2) whose "primary

duty is the performance of office or non-manual work directly related to the management or

general business operations of the employer or the employer's customers"; and (3) whose

"primary duty includes the exercise of discretion and independent judgment with respect to

matters of significance."  29 C.F.R. § 541.200(a).[9]

---

[8]  Boca Bargoons initially claimed that Bubbenmoyer was eligible for the executive exemption, *see* Doc. No. 42 at 4, but it concedes in its summary judgment motion that Bubbenmoyer did not qualify for the executive exemption because he did not regularly supervise more than two (2) employees, as required,  Doc. No. 58 at 7. Accordingly, Boca Bargoons rests its summary judgment motion solely on the argument that Bubbenmoyer qualified for the administrative exemption.

[9]  The Department of Labor significantly revised the regulations governing many of the FLSA's exemptions (including the administrative exemption) in 2004.  *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01 (Apr. 23, 2004), 2004 WL 865626 (revised regulations codified at 29 C.F.R. pt. 541) (setting forth revised regulations and providing

With respect to the phrase "directly related to the management or general business operations," the regulations provide:

> The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line *or selling a product in a retail or service establishment*.

29 C.F.R. § 541.201(a) (emphasis added). Examples of such work include, but are not limited to:

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b). In determining whether work is "directly related to the management or general business operations of the employer or the employer's customers," courts sometimes draw a distinction between "production work" – that is, work that generates the products or services that the employer provides to the public or is related to the carrying out of the company's day-to-day affairs – which does not qualify as exempt, and true administrative work – that is, work that is ancillary to the employer's principal "production" activity, such as work related to running the business itself or determining its overall course or policies – which is exempt. *See, e.g.*, *Cotten v. HFS-USA, Inc.*, 620 F. Supp. 2d 1342, 1347 (M.D. Fla. 2009) (quoting *Talbott v. Lakeview Ctr., Inc.*, No. 3:06cv378/MCR/MD, 2008 WL 4525012, at *4 (N.D. Fla. Sept. 30, 2008)); *Kessler v.*

---

effective date of August 23, 2004). Despite this, Boca Bargoons's summary judgment brief appears to cite exclusively to the pre-revision regulations, which are undisputedly not applicable to this lawsuit. This Report and Recommendation relies on the post-revision regulations and cites to them throughout.

*Lifesafer Serv. Providers, LLC*, 545 F. Supp. 2d 1244, 1246-47 (M.D. Fla. 2008) (citing *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 517 (6th Cir. 2004)).

The term "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The regulations further provide as follows:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.* With respect to the amount of time spent performing particular tasks, the regulations provide as follows:

> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of the employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700(b).

Regarding the "exercise of discretion and independent judgment with respect to matters of significance" prong, the regulations provide as follows:

> To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.

-14-

The term "matters of significance" refers to the level of importance or consequence
of the work performed.

29 C.F.R. § 541.202(a).  The phrase "'discretion and independent judgment' must be applied in

light of all the facts involved in the particular employment situation in which the question arises,"

and the regulation provides a number of factors to be considered in determining whether an

employee exercises discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.202(b).  Moreover, the phrase "exercise of discretion and independent judgment"

"implies that the employee has the authority to make an independent choice, free from immediate

direction or supervision," although the employee may still exercise discretion and independent

judgment "even if their decisions or recommendations are reviewed at a higher level."  29 C.F.R.

§ 541.202(c).

An employee may exercise discretion and independent judgment with respect to matters of

significance, even if multiple employees perform similar work.  29 C.F.R. § 541.202(d).  The

exercise of discretion and independent judgment does not include clerical or secretarial work or

recording or tabulating data, and an employee does not exercise discretion and independent

judgment with respect to matters of significance merely because the employer will experience

financial losses if the employee fails to perform the job properly.  29 C.F.R. §§ 541.202(e)-(f).

B.      *Application of Legal Standard.*

The parties agree that Bubbenmoyer met the salary basis test during his employment at the

Boca Bargoons store in Melbourne.  They dispute, however, whether Bubbenmoyer's work at the

Melbourne store satisfied the remaining two elements of the administrative exemption.

Accordingly, I first consider whether the evidence submitted by the parties creates a genuine issue

of material fact regarding the second prong of the test for the administrative exemption – whether

Bubbenmoyer's primary duty was the "performance of office or non-manual work directly related

to the management or general business operations of the employer or the employer's customers."

Although it bears the burden of showing that the administrative exemption applies to

Bubbenmoyer, Boca Bargoons does not actually identify Bubbenmoyer's "primary duties" in its

motion for summary judgment, let alone apply the current regulatory criteria for determining

whether the identified duties were primary.  Regardless, even if Boca Bargoons had identified

potentially exempt primary duties, Bubbenmoyer cites to evidence that could support a finding

that his primary duties consisted of work that was not "directly related to the management or

general business operations of the employer or the employer's customers."  29 C.F.R. §

541.201(a).

Specifically, the record before the Court includes evidence that Bubbenmoyer spent most

of his time selling fabric to Boca Bargoons's customers (*see, e.g.*, Bubbenmoyer Dep. at 17, 34,

41; Lyda Dep. at 20-22); spent a significant amount of time performing manual repair and

maintenance work in the Melbourne store (*see, e.g.*, Bubbenmoyer Dep. at 17-18, 65-66; Lyda

Dep. at 21-22, 32); generally performed the same duties as non-exempt hourly sales employee

Lyda, with the exception of some additional manual repair and maintenance work (*see, e.g.*, Lyda

Dep. at 21); was responsible for relatively few tasks that might potentially qualify for the

administrative exemption (with occasional completion of the daily settlement sheet and his

allegedly voluntary initialing of timesheets being the main exceptions) (*see, e.g.*, Bubbenmoyer

Dep. at 24-25, 27-28, 31-33, 36-37, 42, 66, 70, 72; Lyda Dep. at 24)[10]; spent relatively little time on such potentially administrative tasks (*see, e.g.*, Lyda Dep. at 18); and was required to consult with the corporate office on many matters (*see, e.g.*, Bubbenmoyer Dep. at 34-35, 37-38, 43-44, 51, 53-54; Lyda Dep. at 22-23). This evidence is sufficient to create a genuine issue of material fact as to whether any of Bubbenmoyer's non-exempt duties were his primary duty. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269-73 (11th Cir. 2008) (affirming district court's denial of motion for judgment as a matter of law as to executive exemption because evidence was sufficient for jury to determine that employer failed to meet burden of proving that store managers' primary duty was management where employees spent 80-90% of time performing nonexempt work and employees were left with little choice in how to manage their stores); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 675-76 & n. 1 (11th Cir. 2009) (applying 29 C.F.R. §§ 541.700(a)-(b), reversing district court's grant of summary judgment to employer, and finding genuine issue of material fact as to whether the employee's primary duty consisted of exempt executive tasks, where, despite evidence that employee earned significantly more than his subordinates, admittedly engaged in some managerial tasks, and exercised some discretion to run his department, evidence suggested that employee spent most of his time on non-exempt tasks, had few managerial duties, and was subject to supervision and direction from his superiors; stating, "[W]here an employee spends the majority of his time on non-exempt work and has admittedly few managerial-type obligations, there is at least a factual question as to whether the

---

[10] By referring to Bubbenmoyer's non-sales and maintenance tasks as potentially qualifying for the administrative exemption, I take no position on whether they do, in fact, constitute "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," as would be required to qualify for the exemption.

non-exempt duties are comparatively more important than the exempt duties.");[11] *see also Kessler*, 545 F. Supp. 2d at 1247 (finding question of material fact as to whether employee qualified for administrative exemption where employee spent majority of time on non-exempt tasks).

Boca Bargoons argues that Bubbenmoyer's work selling fabric fulfills the second prong of the test for the administrative exemption. It argues, "The sale of fabric to its customer base is without question the most important part of Defendant's business. When Plaintiff assisted customers, as he claims to have spent the majority of his time, this task also consisted of non-manual labor directly related to the general business operations of the Defendant." Doc. No. 58 at 12.

The current regulations undermine this argument. The regulations explicitly identify "selling a product in a retail or service establishment" as non-exempt work. *See* 29 C.F.R. § 541.201(a) ("To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example from . . . *selling a product in a retail or service establishment*.") (emphasis added). Moreover, if "the sale of fabric to its customer base is without question the most important part of [Boca Bargoons's] business," as Boca Bargoons claims, then Bubbenmoyer's work in selling fabric was more akin to non-exempt "production" work than exempt work "directly related to assisting with the running or servicing of the business" of Boca Bargoons. *See, e.g.*, *Cotten*, 620 F. Supp. 2d at 1348-49 (denying motion for summary judgment, finding question of fact as to whether plaintiff's primary duty was exempt administrative work, and noting that plaintiff's work of supervising installation

---

[11]  This unpublished opinion of the Eleventh Circuit is cited as persuasive authority, not binding precedent.

jobs was akin to "production" work where employer's primary business was providing installation services).

Boca Bargoons's reliance on *Brillas v. Bennett Auto Supply, Inc.*, 675 F. Supp. 2d 1164 (S.D. Fla. 2009), does not change this conclusion.  In that case, the court found, based on the undisputed evidence, that Brillas was an Assistant Store Manager of a retail auto supply store. The court further found that Brillas's primary duty was "management," and, based on other evidence of record, that Brillas fell within the executive exemption to the FLSA.  *Id.* at 1167- 70. Thereafter, in *dicta*, the court discussed whether the administrative exemption also applied to Brillas.  The court noted that Brillas agreed that one of his primary duties was the performance of non-manual work directly related to the management or general business operation of the store, including drafting various reports that kept track of accounting, inventory, accounts receivable, and the like.  *Id.* at 1170.  In the aspect of "exercise of discretion and independent judgment with respect to matters of significance," the court cited evidence that Brillas helped customers find the right automotive parts for the right price.  *Id.* at 1171.  Based on this and other evidence of record, the court found that Brillas fell within the administrative exemption.  *Id.* at 1172.

The undisputed facts in the present case are not similar to those presented in *Brillas*.  First, Bubbenmoyer did not stipulate, and the undisputed facts do not establish, what Bubbenmoyer's primary duty at the store was.  Unlike *Brillas*, there is no evidence that Bubbenmoyer drafted various reports to track the store's operation.  At most, the undisputed facts establish that either he or Lyda prepared a settlement sheet at the end of each day, which was merely recording or tabulating sales data that did not involve exercise of discretion or independent judgment.  Second, there is no indication in the opinion that the parties in *Brillas* advised the court that 29 C.F.R.  §

541.201(a) explicitly excludes retail sales from the administrative exemption. Moreover, the docket in *Brillas* reveals that Plaintiff Brillas did not oppose entry of summary judgment against him. Case No. 9:09-cv-80068-KLR, Doc. No. 22. Therefore, the *Brillas* decision, which is not binding on this Court, is neither factually nor legally persuasive.

Boca Bargoons also relies on two other cases – both from outside the Eleventh Circuit – to establish that Bubbenmoyer's duties satisfied the "primary duty" prong of the administrative exemption: *Cowan v. Tricolor, Inc.*, 869 F. Supp. 262 (D. Del. 1994), and *Stricker v. Eastern Off Road Equipment, Inc.*, 935 F. Supp. 650 (D. Md. 1996). Doc. No. 58 at 7-8, 10. These cases are not binding on this Court and are of limited persuasive value because their facts are distinguishable and the opinions were necessarily based on pre-2004 versions of the federal regulations. In *Cowan*, the plaintiff essentially admitted that she qualified for the administrative exemption in her interrogatory answers, and there was no suggestion that she spent the majority of her time on non-exempt tasks. *Cowan*, 869 F.Supp. at 264-65. In *Stricker*, the plaintiff had significantly more potentially administrative duties than did Bubbenmoyer. *Stricker*, 935 F. Supp. at 656-57.

Ultimately, the record currently before the Court includes evidence, albeit disputed, from which a reasonable jury could conclude that Bubbenmoyer's primary duty consisted of tasks that were not "directly related to the management or general business operations" of Boca Bargoons. Accordingly, Boca Bargoons has not met its burden of proving that, based on undisputed facts, Bubbenmoyer's work met the requirements of all three prongs of the administrative exemption.

**V.      RECOMMENDATION.**

On the record evidence currently before the Court, there is a genuine issue of material fact as to whether Bubbenmoyer's primary duty was exempt administrative work or non-exempt work. Accordingly, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Boca Bargoons's Motion for Summary Judgment.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 30, 2013.

*Karla R. Spaulding*
          KARLA R. SPAULDING
          UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy